UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **VALERIE  R. and APRIL C.,** | * | |
| **Individually and on behalf of all others** | * | **Civil Action No.** |
| **similarly situated,** | * | |
| **Plaintiffs** | * | **SECTION  " "** |
| **VERSUS** | * | |
| | * | **JUDGE** |
| **ALLERGAN, INC. f/k/a INAMED** | * | |
| **CORPORATION, ALLERGAN USA,** | * | **MAG. JUDGE** |
| **INC., and ALLERGAN PLC.** | * | |
| **Defendants** | * | |

## CLASS ACTION COMPLAINT

**NOW INTO COURT**, come Plaintiffs Valerie R and April C. ("Plaintiffs"), individually and on behalf Plaintiffs of all others similarly situated, sue Defendants Allergan, Inc., Allergan USA, Inc., and Allergan PLC (collectively "Allergan"). Allergan manufactures and sells BIOCELL saline-filled and silicone-filled breast implants and tissue expanders ("BIOCELL" or "BIOCELL textured implants"). Plaintiffs allege Allergan's BIOCELL textured breast implants have increased her risk of developing breast implant-associated anaplastic large cell lymphoma ("BIA-ALCL"). On July 24, 2019, Allergan announced a worldwide recall of BIOCELL after the US Food and Drug Administration ("FDA") called for the action following new information that Allergan's BIOCELL implants were tied to cases of BIA-ALCL.

## PARTIES

1.    Plaintiffs Valerie R. and April C. resided as domiciliaries of St. Tammany Parish, Louisiana, at all times relevant to this action.

2.    Plaintiff Valerie R. had Allergan Biocell textured implantation surgery in February, 2007 within the Eastern District of Louisiana.  Defendants manufactured these implants, identified as **Serial** 11967152 and 11732441.

1

3.  Plaintiff April C. had Allergan Biocell textured implantation surgery on March 23, 2018 within the Eastern District of Louisiana. Defendants manufactured these implants, identified as the **Naturelle 410 Highly Cohesive Anatomically Shaped Silicone-Filled Breast Implants.**

4.  The United States Food and Drug Administration ("FDA") recalled these implants on July 24, 2019. At the time of the procedures performed in Louisiana, Plaintiffs resided as domiciliaries of Louisiana. Plaintiffs would not have had the recalled BIOCELL products implanted had they had known before their surgeries that the BIOCELL textured implants increased their risk of contracting BIA-ALCL, besides the costs associated with surgical removal of the implants. Plaintiffs seek removal of the BIOCELL textured implants at Defendants' full expense.

5.  Defendant Allergan PLC is a corporation with its headquarters in Dublin, Ireland, with its principal place of business at 5 Giralda Farms, Dodge Dr., Madison, New Jersey 07940.

6.  Defendant Allergan, Inc., formerly known as Inamed Corporation or McGhan Medical Corporation, is a wholly-owned subsidiary of Allergan PLC. In March 2006, Allergan acquired Inamed and its wholly-owned subsidiary McGhan for approximately $3.2 billion. During the acquisition, Allergan also acquired the BIOCELL trademark and assumed the risks associated with these products. Defendant Allergan, Inc., is incorporated under the laws of Delaware and has its principal place of business at 5 Giralda Farms, Dodge Dr., Madison, New Jersey 07940. The research and development center, and the secondary manufacturing facility for Allergan's BIOCELL textured implants, is in Santa Barbara, California.

2

7.    Defendant Allergan USA, Inc., is a wholly-owned subsidiary of Allergan PLC. Defendant Allergan USA, Inc. is incorporated under the laws of Delaware and has its principal place of business at 5 Giralda Farms, Dodge Dr., Madison, New Jersey 07940.

8.    At all times, each Defendant acted as the agent and alter ego of the other.

9.    Any reference to "Allergan," "Defendant," or "Defendants" herein refers to each and every Defendant individually and collectively.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332, because the proposed class action: (1) has at least 100 class members; (2) the combined claims of class members exceeds $5,000,000.00, exclusive of interests, attorneys' fees, and costs; and (3) Plaintiffs and some members of the Class are citizens of states different than Defendants. *See* 28 U.S.C. § 1332(d)(2).

11.    This Court has specific personal jurisdiction over Allergan because Allergan conducts substantial business in Louisiana and within this District. Allergan has sufficient minimum contacts with Louisiana and intentionally avails itself of the consumers and markets within Louisiana through the promotion and sale of the BIOCELL textured breast implants. Plaintiffs' breast implant surgery using the BIOCELL textured implants manufactured by Allergan occurred in Louisiana.

12.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions causing these claims occurred in this venue.

## FACTUAL ALLEGATIONS

### Background

13.     Breast implants are medical devices implanted under the breast tissue to

increase breast size or replace breast tissue that has been removed. Tissue expanders are a type of

inflatable breast implant which stretches skin and muscle to make room for a permanent implant.

Tissue expanders are often used in breast reconstruction surgeries.

14.     Breast implants were first introduced in the 1960s. In 1976, Congress passed the

Medical Device Amendment to the Federal Food, Drug and Cosmetic Act which allowed the FDA

to review and approve new medical devices, including breast implants.

15.     The FDA uses a three-tiered organizational system to classify medical devices,

Class I, II, and III, based on the device's safety risks. Generally, the greater the safety risk, the

greater the regulatory control asserted by the FDA and the higher the class listing. A Class I

medical device has low to moderate risk to the user. Examples of Class I devices are elastic

bandages, stethoscopes, and bedpans. A Class II medical device has a moderate to high risk to the

user. Examples of a Class II medical device include electric powered wheelchairs and pregnancy

test kits. A Class III medical device has a high risk to the patient or user. Examples of Class III

devices are pacemakers and breast implants. Class III medical devices are considered, by the FDA,

to create the greatest risk to human safety and necessitate the need for special controls. One

special control is the requirement to obtain premarket approval under 21 USC. § 360 before

marketing the device to the public. The premarket approval process allows the FDA to engage in

scientific evaluations to determine if a Class III device is safe and effective.

## The Products

16.      In January 2011, the FDA identified a link between breast implants and BIA-ALCL. BIA-ALCL is a type of non-Hodgkin's lymphoma, a cancer of the immune system. BIA-ALCL is not breast cancer, although usually BIA-ALCL is found in scar tissue and fluid near the breast implant. Sometimes, the cancer will spread throughout the body to other systems.

17.      The main symptoms of BIA-ALCL are persistent swelling or enlargement of a patient's breast or surrounding tissue that develops a year or more after breast implant surgery, lumps in the breast or armpit, pain, rash, redness, hardening of the breast, or changes in the shape or size of the breast.

18.      BIA-ALCL is a serious cancer and can be fatal, especially if not diagnosed early or promptly treated.

19.      BIA-ALCL can be treated by surgically removing the implant and surrounding scar tissue. Some patients may also require chemotherapy and radiation treatments.

20.      The symptoms of BIA-ALCL may occur years after the implant placement.

21.      The diagnostic testing recommended to determine if BIA-ALCL is present is invasive.

22.      On July 24, 2019, the FDA issued a worldwide Class I Recall of BIOCELL textured implants. A Class I Recall is the most urgent recall and indicates that use of the recalled product may cause serious injury or death. The FDA issued this recall because the BIOCELL implants were tied to a large majority of cases of BIA-ALCL. The risk of developing BIA-ALCL is greatly increased if the patient has textured implants. The FDA announced the risk of BIA-ALCL in women with textured implants ranges from 1:3,817 and 1:30,000.

5

23.     The FDA determined that Allergan's BIOCELL textured implants increased the risk of developing BIA-ALCL six hundred percent when compared with textured implants from other manufacturers.

24.     On July 24, 2019, in its recall statement, the FDA stated there are 573 diagnosed cases of BIA-ALCL worldwide and 33 people had died because of BIA-ALCL. This is a "significant increase" since the FDA's update earlier in 2019 found there were 116 new cases of BIA-ALCL and 24 deaths. Of the 573 individuals with BIA-ALCL, 481, or 83.9%, had Allergan's BIOCELL implants. Of the 33 deaths caused by BIA-ALCL, 12 of the 13 patients where the implant manufacturer was known had Allergan's BIOCELL textured implants.

25.     The products affected by the FDA's recall are:

- **Style Allergan Natrelle Saline-Filled Breast Implants** (formerly McGhan R.T.V. Saline-Filled Mammary Implant). The following are the textured styles:

  i.   Style 163 – BIOCELL Textured Shaped Full Height, Full Projection Saline Breast Implants

  ii.  Style 168 – BIOCELL Textured Round Moderate Profile Saline Breast Implants, also called 168MP (168 Moderate Profile)

  iii. Style 363 – BIOCELL Textured Shaped Moderate Height, Full Projection Saline Breast Implants, Allergan catalog includes 363LF, or 363 Low Height Full Projection

  iv.  Style 468 – BIOCELL Textured Shaped Full Height Moderate Projection Saline Breast Implants

- **Allergan Natrelle Silicone-Filled Textured Breast Implants** (formerly Inamed Silicone-Filled Breast Implants). The following are the textured styles:

  v.   Style 110 – BIOCELL Textured Round Moderate Projection Gel Filled Breast Implants

  vi.  Style 115 – BIOCELL Textured Round Midrange Projection Gel Filled Breast Implants

  vii. Style 120 - BIOCELL Textured Round High Projection Gel Filled Breast Implants

    viii.   Style TRL - Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants

      ix.   Style TRLP - Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants

      x.   Style TRM - Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants

     xi.   Style TRF - Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants

    xii.   Style TRX. - Natrelle Inspira BIOCELL Textured Responsive Silicone-Filled Breast Implants

   xiii.   Style TCL – Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants

   xiv.   Style TCLP – Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants

   xv.   Style TCM – Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants

   xvi.   Style TCF – Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants

  xvii.   Style TCX. – Natrelle Inspira BIOCELL Textured Cohesive Silicone-Filled Breast Implants

 xviii.   Style TSL – Natrelle BIOCELL Textured Soft Touch Silicone-Filled Breast Implants

  xix.   Style TSLP – Natrelle BIOCELL Textured Soft Touch Silicone-Filled Breast Implants

  xx.   Style TSM – Natrelle BIOCELL Textured Soft Touch Silicone-Filled Breast Implants

  xxi.   Style TSF – Natrelle BIOCELL Textured Soft Touch Silicone-Filled Breast Implants

  xxii.   Style TSX – Natrelle BIOCELL Textured Soft Touch Silicone-Filled Breast Implants

- **Natrelle 410 Highly Cohesive Anatomically Shaped Silicone Filled Breast Implants**. The following are the textured styles:

  xxiii.   Style 410FM

  xxiv.   Style 410FF

  xxv.   Style 410MM

  xxvi.   Style 410 MF

 xxvii.   Style 410 FL

7

| | |
|---|---|
| xxviii. | Style 410 ML |
| xxix. | Style 410 LL |
| xxx. | Style 410 LM |
| xxxi. | Style 410 LF |
| xxxii. | Style 410 FX |
| xxxiii. | Style 410 MX |
| xxxiv. | Style 410 LX |

- Allergan tissue expanders with BIOCELL texturing originally cleared as:

| | |
|---|---|
| xxxv. | Natrelle 133 Plus Tissue Expander (K143354) |
| xxxvi. | Natrelle 133 Tissue Expander with Suture Tabs (K102806). |

26.     Well before the FDA's recall on July 24, 2019, numerous studies documented the risk of developing BIA-ALCL in association with BIOCELL textured breast implants. The American Society of Plastic Surgeons estimates that the current risk of BIA-ALCL for women with textured implants ranges from 1:2,207 and 1:86,029. In March 2015, the French National Cancer Institute claimed "[t]here is a clearly established link between the occurrence of this disease and the presence of a breast implant." On March 21, 2017, the FDA updated its 2011 warning and stated "[t]he risk of BIA-ALCL is higher for textured surface implants versus smooth surface implants."

27.     In December 2018, Allergan's BIOCELL textured implants lost their European certification and were suspended from the European and Brazilian markets. Allergan textured implants were banned in France in April 2019. Allergan's BIOCELL textured implants were banned in Canada in May 2019.

**The Warranty**

28.     On July 24, 2019, Allergan announced that BIOCELL textured breast implants would no longer be sold or distributed in any market.

29.     On July 30, 2019, Allergan announced it had created a BIOCELL Replacement Warranty for all customers that have BIOCELL textured implants ("the Warranty"). Allergan will provide Allergan smooth implants to replace the BIOCELL textured implants. However, Allergan will provide no surgical fee assistance or reimbursement for the surgery to remove the BIOCELL textured implants and replace them with Allergan smooth implants. The Warranty will run for 24 months, until July 24, 2021, and will apply only to revision surgeries on or after the FDA's recall, July 24, 2019.

30.     The Warranty is insufficient because it does not provide for surgical fee assistance for breast implant revision and instead only provides free smooth Allergan implant replacement.

31.     If a customer with a BIOCELL textured implant is diagnosed with BIA-ALCL, under the NATRELLE Confidence Plus Warranty, the customer will be reimbursed for diagnostic fees up to $1,000 and up to $7,500 in surgical fees related to diagnosing and treating BIA-ALCL.

32.     The Confidence Plus Warranty is wholly insufficient as it applies to customers who are diagnosed with BIA-ALCL. The Warranty's reimbursement of $1,000 for diagnostic fees and $7,500 for surgical removal and cancer treatment is entirely too low concerning the expensive and invasive nature of surgery and cancer treatment.

33.     Because of Allergan's conduct, including refusal to pay for the removal of the recalled BIOCELL implants and the increased risk of developing BIA-ALCL, Plaintiffs will be forced to expend substantial money for surgery, medical monitoring, diagnostic testing, and other medical expenses.

**The Concealment**

34.     Manufacturers selling medical devices in the United States have continuing obligations to comply with medical device reporting requirements.

35.    Consumers and medical personnel rely on the timely and accurate disclosures of information by medical device manufacturers in their decision making.

36.    Breast implants are a Class III medical device.

37.    The FDA requires that a Class III medical device receive premarket approval ("P.M.A.") from the FDA before it can be marketed. A PMA application provides regulatory and scientific information to the FDA, demonstrating the safety and effectiveness of the device. PMA is the strictest type of medical device marketing application due to the increased risk associated with Class III medical devices. A PMA application will not be approved if it is incomplete, inaccurate, inconsistent, omits critical information, or is poorly organized. If a Class III medical device fails to receive PMA, it cannot be marketed. Failing to comply with, or withhold information from, a PMA application is cause for withdrawal of the application.

38.    21 CFR § 803.50(a) requires a manufacturer to report to the FDA any information that is reasonably known that may reasonably suggest a device may have caused or contributed to serious injury or death within 30 calendar days after learning such information. Information is "reasonably known" if the information can be obtained by contacting "a user facility, importer or other initial reporter;" in the manufacturer's possession; or "can be obtain[ed] by analysis, testing, or other evaluation of the device." 21 CFR § 803.50(b). If information is found, the manufacturer must investigate each reported event and evaluate the cause. *Id.*

39.    Manufacturers selling medical devices in the United States must also provide periodic reports to the FDA, including "[u]npublished reports of data from any clinical investigations or nonclinical laboratory studies involving the device or related devices and known to or that reasonably could be known to the applicant" and "[r]eports in the scientific literature

concerning the device and known to or that reasonably should be known to the applicant." 21 CFR § 814.84.

40.    The FDA publishes adverse events reports about findings of products in a database called the Manufacturer and User Facility Device Experience database ("MAUDE"). This database is available to the public.

41.    Allergan's BIOCELL textured implants received premarket approval from the FDA. in November 2006. After receiving premarket approval for a Class III device, a manufacturer must file adverse event reports with the FDA 21 USC. § 360(a)(1) and 21 CFR § 803.50(a). The primary responsibility for timely and accurately reporting events to the FDA about the safety and effectiveness of a medical device is with the manufacturer. These reports are to be submitted to MAUDE.

42.    Allergen must file adverse event reports with the FDA in connection with medical devices it produces. Allergen also must timely communicate any safety information about its medical devices to the FDA Allergen must monitor all reasonably available information and clinical studies about its medical devices.

43.    Allergan has known about the connection between its textured implants and the increased risk of developing BIA-ALCL since at least 2011. During the late 1990s and early 2000s, McGhan (later Inamed) began long-term clinical studies on its silicone breast implants. In 2000, Inamed, began a ten-year study to determine the safety and performance of the McGhan Medical R.T.V. Saline-Filled Breast Implant. In 2006, Allergan purchased Inamed and began several long- term studies to assess the performance of their breast implants, and evaluate health or safety risks, including cancer risks. And as a condition of this premarket approval, the FDA required Allergan to conduct six post-approval studies to determine the long-term safety of these implants.

11

44.     However, Allergan did not disclose the connection between the BIOCELL textured implants and BIA-ALCL to the FDA, or the public.

45.     Allergan did not accurately report adverse events each time an injury or malfunction occurred about the BIOCELL textured implants.

46.     Until 2017, Allergan buried evidence of ruptures and other injuries with its implants by reporting these as routine events that required no public disclosure. Allergan hid these incidents in "Alternative Summary Reports" ("ASR"), which do not have to be reported to the FDA Manufacturer and User Facility Device Experience Database, or "MAUDE". The ASR program should exclude severe or unexpected events or injuries. Severe or unexpected events or injuries must be reported through MAUDE.

47.     Allergan manipulated the ASR program to hide these serious events from public disclosure.

48.     Allergan used the ASR program to disclose adverse event reports required to be disclosed to the public through MAUDE.

49.     Allergan buried serious events in non-public ASR reports, including a possible case of BIA-ALCL.

50.     Further substantiating that severe breast implant events were buried in the ASR. program, the FDA implemented more rigorous reporting requirements in 2017 and there was a dramatic increase in the number of adverse events related to breast implant injuries – from 200 in a single year to 4,567 in 2017 and 8,242 in the first six months of 2018.

51.     The FDA even acknowledges there was a "transparency issue" until recently with the reporting of adverse event reports. The FDA said the increase in adverse event reports

reflected the FDA's implemented change in reporting requirements in 2017 and not "a new public health issue."

52.     The FDA relies on accurate reporting of adverse events to monitor the safety of medical devices. The general public, medical personnel, and researchers rely on MAUDE to monitor the safety of medical devices.

53.     Because Allergan deceptively and inaccurately used ASR instead of MAUDE to report adverse incidents, Allergan misled the FDA, medical personnel, researchers, its customers, and the general public. Allergan's customers were exposed to harm.

54.     And Allergan did not report to the FDA adverse events from its required post-market approval studies. These post-market approval studies indicate that the recalled BIOCELL textured implants have caused or contributed to death and/or serious injury by increasing the risk of BIA-ALCL.

55.     Allergan continuously received new information showing the connection between its textured breast implants and the increased risk of developing BIA-ALCL.

56.     Allergan violated the conditions of the PMA application.

57.     Allergan violated federal law by failing to accurately and promptly report  adverse events.

58.     Allergan also violated state laws, which do not impose duties or requirements different from those imposed by federal law. Therefore, under both state and federal law, Allergan had to promptly report any information indicative of a serious injury associated with one of its medical devices.

59.     Because Allergan failed to file adverse event reports, consumers, medical personnel, and the FDA could not detect trends in Allergan's products. This deprived the market

and consumers of the information to make an informed decision about whether Allergan's products were safe and effective.

60.     Had Allergan complied with its obligations under federal law, disclosing the risk of BIA-ALCL and BIOCELL textured implants would have allowed Plaintiffs and her surgeon to make an informed decision whether to use the BIOCELL implants.

61.     Allergan acted recklessly and with intentional disregard for the safety of Plaintiffs and its customers.

62.     Besides Allergan's failure to comply with reporting requirements, Allegan continued to distribute the textured implants commercially. This distribution violated federal law.

## CLASS ALLEGATIONS

63.     Plaintiffs sue on her behalf and behalf of the following class under the Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4):

> All individuals who, while residing within the State of Louisiana, received surgically implanted BIOCELL saline-filled or silicone-filled breast implants or tissue expanders marketed by Allergan and any affiliated or predecessor entity, which medical devices have been recalled by the FDA.

64.     Excluded from the Class are Allergan, their parents, subsidiaries, affiliates, officers and directors, any entity in which Allergan has a controlling interest, all class members who timely elect to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members. Plaintiffs reserve the right to modify, change, or expand the class definition based on facts learned through discovery and further investigation.

65.     <u>Numerosity:</u> Members of the Class are so numerous that individual joinder is impracticable. Plaintiffs are informed to believe the proposed Class contains at least thousands of individuals who have the recalled BIOCELL textured breast implants. Therefore, the Class is sufficiently numerous to make joinder impracticable, if not impossible. While the precise number of Class members is unknown to Plaintiffs at this point, the Class members are readily ascertainable and can be identified via Allergan's records.

66.     <u>Existence and Predominance of Common Questions of Law and Fact:</u> Common questions of law and fact exist to all members of the Class. These questions predominate over question affecting only individual Class members. These common legal questions include, but are not limited to:

- Whether Allergan was negligent in selling the BIOCELL textured implants;

- Whether Allergan failed to adequately warn consumers of the risks associated with the BIOCELL textured implants;

- Whether Allergan violated federal standards and requirements for the marketing, warning, and reporting of the recalled BIOCELL products;

- Whether Allergan breached implied warranties connected with the recalled BIOCELL products;

- Whether the recalled BIOCELL textured implant products contained a defect under Louisiana law;

- Whether the recalled BIOCELL textured implant product was unreasonably dangerous in construction or composition under Louisiana law;

- Whether the recalled BIOCELL textured implant product was unreasonably dangerous in design under Louisiana law;

- Whether the recalled BIOCELL textured implant product was unreasonably dangerous because of an inadequate warning under Louisiana law;

- Whether Allergan's conduct constitutes unfair trade practices under Louisiana law;

- Whether Plaintiffs and the putative Class members are entitled to equitable relief, including injunctive relief; and

- Whether Plaintiffs and the putative Class members are entitled to damages and monetary relief, and if so, in what amount.

These questions, and others, are common to the Class and predominate over questions affecting only individual members of the Class.

67.     Typicality: Plaintiffs' claims are typical of the claims of all members of the Class who have the recalled BIOCELL textured breast implants.

68.     Adequacy: Plaintiffs are adequate representative of the Class because Plaintiffs' interests do not conflict with the interests of the Class that Plaintiffs seeks to represent. Plaintiffs' counsel is highly experienced in complex class action litigation. The interests of the Class will be fairly and adequately represented by Plaintiffs and her counsel.

69.     Superiority: A class action is the superior method for fair and efficient adjudication. The injuries suffered by each Class member is relatively small in comparison with the burden, expense, and time dedicated to individual prosecution. The litigation will be complex and extensive, and it would be very difficult for the Class to individually redress Allergan's actions. Further, individual litigation poses a risk of inconsistent or contradictory judgments and increases the delay and expense to all parties and the courts. Class actions present far less management difficulties and provides judicial efficiency and removes the risk of inconsistent judgments in courts.

70.      Injunctive Relief: Class certification is also appropriate under Rule 23(b)(2) because Allergan acted and refused to act on grounds generally applicable to the class, making appropriate final injunctive relief regarding the class.

## CAUSES OF ACTION

### COUNT I

### LOUISIANA PRODUCTS LIABILITY LAW

71.      Plaintiffs incorporate the above allegations by reference.

72.      Allergan manufactured, distributed, and/or sold the BIOCELL textured breast implants surgically implanted in the Plaintiffs and the members of the putative class.

73.      Allergan is a "manufacturer" of the BIOCELL textured breast implants, as that term is defined under La. RS 9:2800.53(1).

74.      Allergan is a "seller" of the BIOCELL textured breast implants, as that term is defined under La. RS 9:2800.53(2)

75.      The BIOCELL textured breast implants surgically implanted in the Plaintiffs and the members of the putative class are "products" as that term is defined under La. RS 9:2800.53(3).

76.      On information and belief, Plaintiffs aver that the BIOCELL textured breast implants surgically implanted in the Plaintiffs and the members of the putative class were unreasonably dangerous in construction or composition in that when the product left Allergan's control, it deviated in a material way from Allergan's specifications or performance standards, or from those expected of the product by federal regulatory authorities, or from other wise identical products manufactured by Allergan.

77.     The surgical implantation of the BIOCELL textured breast implants into the Plaintiffs and the members of the putative class, and all uses made thereafter of the BIOCELL textured breast implant products by the Plaintiffs and the members of the putative class, represented a reasonably anticipated use of the BIOCELL textured breast implant products, as defined under La. RS 9:2800.53.

78.      Under federal law and La. RS 9:2800.53(4) Allergan had a duty to issue an adequate warning to Plaintiffs and her physician about the increased risk of developing BIA-ALCL with the BIOCELL textured implants.

79.     The acts, practices, and omissions engaged in by Allergan in its design, manufacturing, marketing, distribution, and sale of the BIOCELL textured breast implants violated the Louisiana Products Liability Act, La. RS 9:2800.51, et seq.

80.     Plaintiffs and the Class suffered damages in an amount to be determined at trial.

## COUNT II

## STRICT LIABILITY – FAILURE TO WARN

81.     Plaintiffs incorporate the above allegation by reference.

82.     Allergan manufactured, distributed, and sold the BIOCELL textured breast implants, which were surgically implanted in the Plaintiffs and the members of the putative class.

83.     Allergan knew or should have known in the exercise of ordinary care, that the BIOCELL textured breast implants were unreasonably dangerous in design or composition at the time the implants left Allergan's control and were received by Plaintiffs. Their unreasonably dangerous nature was not generally known to the consumer. Allergan acquired this knowledge from the performance of extensive studies, reviewing other scientific studies, complaints received from consumers, and other sources. Further, the BIOCELL textured breast implants'

health risks were known in the scientific and medical community at the time of their manufacture, distribution, or sale.

84.    Allergan, in violation of federal law, attempted to conceal this information by not making adverse event reports to the FDA.

85.    Allergan, in violation of federal state law, filed ASR reports to avoid the public reporting of adverse event reports on MAUDE.

86.    The BIOCELL textured breast implants were defective and unreasonably dangerous when they left Allergan's possession because they did not contain adequate warnings, including the lack of warning about the increased risk of developing BIA-ALCL associated with the BIOCELL textured implants.

87.    Allergan failed to warn Plaintiff and her physician about the dangers of the BIOCELL textured breast implants.

88.    Plaintiff and ordinary consumers would not have recognized the potential for the risk of developing BIA-ALCL from the BIOCELL textured breast implants.

89.    The potential risks of the BIOCELL textured implants presented and continue to present a substantial danger to Plaintiff and ordinary consumers when used or misused in an intended or reasonably foreseeable way.

90.    Allergan failed to adequately warn or instruct about the risks of BIOCELL textured breast implants.

91.    It was foreseeable that Allergan's failure to adequately warn about the risks associated with the BIOCELL textured breast implants would cause harm to those who had the products implanted, including the emotional distress incurred by Plaintiffs.

92.      Because of Allergan's failure to adequately warn of the risks associated with BIOCELL textured implants; Plaintiffs were harmed as described herein, including physical pain and emotional distress. The lack of sufficient warning substantially caused Plaintiffs' harm. Had Plaintiffs and her physician been provided the appropriate warnings about the increased risk of BIA-ALCL associated with BIOCELL textured breast implants, Plaintiffs and her physician could have made an informed decision about using the product or in selecting an alternative product.

93.      Plaintiffs and the Class suffered damages in an amount to be determined.

**COUNT III**

**<u>NEGLIGENCE</u>**

94.      Plaintiffs incorporate the above allegations by reference.

95.      Allergan has a continuing duty to monitor its medical devices, including the BIOCELL textured breast implants, and report any complaints or findings about product performance and safety to the FDA timely and accurately. Allergan also has a continuing duty to provide warnings and instructions regarding potential safety hazards associated with the use of its products.

96.      Allergan breached these duties by failing to provide timely and adequate reports regarding potential safety hazards related to using the BIOCELL textured breast implants, including the increased risk of developing BIA-ALCL. Allergan was on notice to this risk through adverse reports, consumer complaints, scientific research and literature, internal clinical research, and communications from the FDA and international governmental organizations that Allergan monitored.

20

97.    Allergan knew Allergan's brand of implants imposed a significantly greater risk than competing textured breast implants for the development of BIA-ALCL.

98.    Allergan's breach of its duty to warn has caused Plaintiffs' damages including surgical costs for removal of the BIOCELL textured breast implants, medical monitoring, invasive diagnostic procedures, and other medical expenses.

99.    By submitting misleading adverse event reports and concealing the risks associated with the BIOCELL textured breast implants, Allergan negligently violated its duty of care to Plaintiffs.

100.    Although Allergan knew, or should have known, of the increased risk of BIA-ALCL associated with the BIOCELL textured breast implants and the significant risk of harm to consumers, Allergan continued to manufacture and market the BIOCELL textured breast implants to the public.

101.    Allergan violated applicable FDA and reporting requirements.

102.    Had Allergan properly and timely reported the adverse events to the FDA as required under federal law, Plaintiffs and their physicians would have learned of the significantly increased risk of developing BIA-ALCL with the BIOCELL textured breast implants in time to avoid their injuries.

103.    Allergan knew or should have known that consumers like Plaintiffs would foreseeably suffer injuries because of Allergan's failure to exercise ordinary care and comply with the FDA's reporting requirements, including emotional distress.

104.    Allergan's breach of duty caused Plaintiffs' damages in the form of surgical costs for removal of the products, medical monitoring, and/or invasive diagnostic procedures associated with the BIOCELL© textured breast implants.

105.    As a direct and proximate result of Allergan's breach of duty, Plaintiffs and the Class have suffered harm in an amount to be determined at trial, including severe emotional distress.

## COUNT IV

## NEGLIGENT RECALL

106.    Plaintiffs incorporate the above allegations by reference.

107.    On July 24, 2019, the FDA requested that Allergan recall the BIOCELL textured breast implants in the United States.

108.    On that same day, Allergan issued a worldwide recall of the BIOCELL textured breast implants.

109.    By issuing a recall, Allergan assumed duties to Plaintiffs to exercise reasonable care in issuing and implementing the recall.

110.    Allergan breached its duty by failing to adequately warn Plaintiffs of the increased risk of developing BIA-ALCL in connection with the BIOCELL textured breast implants.

111.    Allergan breached its duty by refusing to pay for the surgical removal of Plaintiffs' implants despite the increased risk of developing BIA-ALCL associated with their implants.

112.    As a direct result of Allergan's breach, Plaintiffs have suffered in an amount to be determined.

## COUNT V

## LOUISIANA REDHIBITION LAW

113.    Plaintiffs incorporate the above allegations by reference.

114.    Allergan is both the "manufacturer" and the "seller" of the BIOCELL textured breast implants within the contemplation of La. Civ. Code article 2520, et seq.

115.    As the manufacturer, Allergan impliedly warranted to Plaintiffs and the members of the putative class, that the implants were of merchantable quality and safe for their ordinary and intended use.

116.    Allergan breached the implied warranty against redhibitory defects in connection with the sale and distribution of the BIOCELL textured breast implants because the products, at the time of sale, contained hidden, non-apparent defects that rendered them unsafe for their ordinary and anticipated use.

117.     If Plaintiffs and the putative class members had known the BIOCELL textured breast implants were unsafe for ordinary use, they would not have chosen them for purchase. It was reasonable for Plaintiffs not to know that the BIOCELL textured breast implants would present an increased risk of developing BIA-ALCL at the time of their purchase.

118.    Allergan has refused and continues to refuse, to provide adequate relief because Allergan will not pay for the cost of surgically implanting the defective devices, the costs paid for the devices, or the surgery for customers, including Plaintiffs and members of the putative class, to have the BIOCELL textured breast implants removed.

119.    As a direct and proximate result of Allergan's breach of the implied warranty against redhibitory defects, Plaintiffs and the members of the putative class have sustained damages in an amount to be determined.

## COUNT VI

## **MEDICAL MONITORING**

120.    Plaintiffs incorporate the above allegations by reference.

121.    Medical monitoring is, to a reasonable medical certainty, required to detect the the presence of BIA-ALCL cancer in Plaintiffs and the members of the putative class.

122.    Medical monitoring is reasonable to properly diagnose the symptoms of BIA-ALCL. This is important because BIA-ALCL is less likely to be fatal if diagnosed and treated early in the disease's progression.

123.    For the reasons elaborated above. Plaintiffs and the putative class members are entitled to have Allergan underwrite the costs of ongoing medical monitoring.

## DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38(b), Plaintiffs request a trial by jury of all issues triable as of right.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests, individually and on behalf of the Class, that this Honorable Court:

A.    Certify the Class under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and/or (c)(4), as appropriate; appoint Plaintiffs as Class Representative, and appoint the undersigned counsel as Class Counsel;


B.    Award Plaintiffs and the Class compensatory, incidental, general, consequential, and exemplary damages in an amount to be determined at trial;

C.    Award prejudgment and post-judgment interest as permitted by law;

D.    Enter an injunction against Allergan and its officers, agents, successors, employees, representatives, assigns, and any persons acting in concert with them, to (1) ensure Allergan's

compliance with applicable federal and state law; and (2) require Allergan to implement a medical monitoring program for Plaintiffs and the putative Class members;

      E.     Retain jurisdiction over this action to ensure Allergan complies with such a decree;

      F.     Enter other appropriate equitable relief; and

      G.     Award reasonable attorneys' fees and costs, as provided for by law.


DATE: July 22, 2020                    Respectfully submitted:


                               *s/Paul A. Lea, Jr.*
                               PAUL A. LEA, JR. (#18637)
                               paul@paullea.com
                               724 East Boston Street
                               Covington, Louisiana 70433
                               Telephone: (985) 292 2300
                               ***Attorneys for Plaintiffs and the Proposed Class***